CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
October 05, 2026
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **JEREMY DEFOUR,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:25CV00728 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **THOMAS MEYER, et al.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

The plaintiff, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 alleging that the defendants at various prison facilities have violated his constitutional rights. Pending before the court is DeFour's Motion to Serve Defendants (Motion), Dkt. No. 17. Upon review, I conclude that the Motion will be granted in part and denied in part, considering that some claims and defendants must be dismissed without prejudice under 28 U.S.C. §1915(e)(2)(B)(ii).

## I. DEFOUR'S COMPLAINT.

DeFour complains of events occurring at various prisons, including Red Onion State Prison (Red Onion), Pocahontas Correctional Center (Pocahontas), and Wallens Ridge State Prison (Wallens Ridge), which he believes stem from his filing of prior lawsuits against Virginia Department of Corrections (VDOC) officials.[1]

---

[1] *DeFour v. Bentley*, No 7:24cv00284; *DeFour v. Hall*, No. 7:24cv00472, *DeFour v. Mailroom Supervisor*, No. 7:24cv00594, and *DeFour v. White*, 7:22cv00703.

DeFour entered into a settlement agreement in these lawsuits, which were dismissed based on the parties' stipulation on February 26, 2025. DeFour states that, in one of the terms of the agreement, the defendants agreed to dismiss several of his disciplinary convictions. However, he claims that after the agreement was finalized, "the defendants then penalized [him] for the dismissed convictions and raised [his] security housing score from Minimum Security Level (SL) 1 to a Maximum SL 5 based on that penalty." Compl. 4, Dkt. No. 1. He claims this launched a "civil conspiracy" by prison officials, who arranged a "prison swap" on June 20, 2025. *Id.* at 5, 6.

DeFour was transferred from Red Onion to Pocahontas and was "immediately housed in restrictive housing RHU receiving only 3 hours of in pod recreation a day, while other prisoners with [his] level received approximately 14 hour a day." *Id.* at 7. He further states that he did not receive any outside recreation, while others received 4-7 hours each day. When he filed informal complaints and grievances on the issue, defendant Smith "told [him] he knows all about [him] from Red Onion and Western Staff and [he] will have it very hard [at Pocahontas], and [Smith] will have [his] ass beat and send [him] packing back to Maximum Security ASAP." *Id.* Smith "then went and talked to several C/Os including Defendants Carroll, Vest, and Remines, and pointed at [him], and they all looked and shook their heads in agreement." *Id.* at 7–8.

A few days later on July 4, 2025, while DeFour was eating breakfast, Remines "started to taunt [DeFour] calling [him] a 'Retard.'" *Id.* Then, after Remines "said something" on his walkie-talkie, Vest "walked up to [his] other side, and slapped the food out of [his] hand, and slammed [his] face down on the table, and Remines punched [him]." Another officer "grabbed Defendant Remines and tried to pull him off [him] . . . [DeFour] got up, and backed away to escape the attack, and that is when Defendant Vest sprayed [him] for several seconds with a large can of OC spray." *Id.* When DeFour got in the shower to wash the spray out of his mouth, nose, and eyes, he claims that "Vest snatched the shower curtain back and sprayed [him] again for at least 5 seconds before Defendant Caroll threw [him] to the ground slammed [his] head on the concrete twice while [he] was being punched, and kicked." *Id.* at 8–9.

DeFour claims he was then placed in restrictive housing and denied medical treatment for "head, and neck swelling and pain, blurry vision, and muffled hearing from OC spray." *Id.* at 9. Despite informing a nurse of "burning eyes, severe pain, and trouble hearing as well as throwing up" on multiple occasions, he "was never allowed to see a provider." *Id.*

Three days later, DeFour "was shipped to Wallens Ridge." *Id.* at 10. He claims that "[t]his transfer was done without any notice and without any opportunity for a hearing, to present evidence, or any process at all." *Id.* Instead, he contends

that defendants Smith, Meyer, Williams, and Ford "conducted a secret meeting determining to transfer [him] to a Maximum Security in a matter of minutes." *Id.* It wasn't until his arrival at Wallens Ridge that he learned of his disciplinary charges.

While housed at Wallens Ridge, DeFour claims that he was "subjected to Restricted Housing Maximum Security and Lock Down more restricted than SuperMax, receiving 30 minutes out of cell after each 48 hours for months, no personal property, no legal materials, no law library, no visitation, no TV, no Media Device, no socks, TShirts, or boxers." *Id.* at 11. He further claims that unidentified Wallens Ridge correctional officers have denied him meals, showers, outside recreation, phone calls, and clothing items. He also alleges that Wallens Ridge officials Whitt and Coughran threatened him by stating, "welcome back we are running a special for inmates like you." *Id.* at 11. As a result, he has suffered "daily dread, panic and distress." *Id.* at 13.

According to DeFour, this treatment "has been an ongoing campaign of harassment . . . for several years." In that vein, he references an incident that occurred on October 9, 2024, before his prior lawsuits settled, when Red Onion officials "trashed [his] cell." *Id.* at 14. He claims that "one officer stated stop your lawsuits and it will stop happening." *Id.* DeFour complained to defendant Meade about this incident, and Meade "threatened to assault [him]." *Id.* He claims that Meade told him to "cuff up," and that he complied with the instruction. *Id.* Meade

"then told [him] to crawl backwards with [his] hands cuffed behind [his] back balancing on [his] knees," but DeFour was unable due to a knee injury. *Id.* Meade "then proceeded to choke [him], applying so much pressure, [he] blacked out." *Id.* DeFour "was dragged out of [his] cell cuffs and shackles tightened until [his] skin bled taken to RHU where [he] was held for approximately 10 days [i]n great pain with no medical care." *Id.*

Based on these factual allegations, I construe DeFour's claims for relief as follows:

**Claim 1:** Defendants Remines, Vest, Carroll, and two John Doe Correctional Officers used excessive force against DeFour in violation of his Eighth Amendment rights when they assaulted him and used excessive mace on July 4, 2025.

**Claim 2:** Defendants Remines, Vest, Carroll, and two John Doe Correctional Officers assaulted and battered him in violation of Virginia Law when they assaulted him and used excessive mace on July 4, 2025.

**Claim 3:** The actions of defendants Remines, Vest, Carroll, and two John Doe Correctional Officers on July 4, 2025, were in retaliation against him in violation of his First Amendment rights.

**Claim 4:** Defendants Buenaga, Reynolds, Duncan, Meyer, and Smith conspired and retaliated against him by manipulating his housing level and transferring him to Pocahontas.

**Claim 5:** Defendant Smith violated his Eighth Amendment rights by threatening him and consulting with other officers who carried out an assault on him.

**Claim 6:** Defendants Smith, Meyer, Williams, and Ford conspired and retaliated against him by transferring him to Wallens Ridge.

**Claim 7:** Defendants Smith, Meyer, Williams, and Ford violated his due process rights by transferring him to Wallens Ridge.

**Claim 8:** DeFour's disciplinary infractions were imposed by the defendants in retaliation and without due process.

**Claim 9:** Defendants Duncan, Reynolds, Ford, and Buenaga retaliated against him and breached the settlement agreement by penalizing him for disciplinary charges when VDOC had agreed to dismiss them during the settlement of his prior lawsuit.

**Claim 10:** Defendants James Parks, Chadwick Dotson, and David Anderson authorized these actions.

**Claim 11:** Defendant Meade used excessive force against him by choking him, and using excessively tight restraints, and retaliated against him by placing him in the RHU.

## II. SUMMARY DISMISSAL OF CLAIMS.

Under 28 U.S.C. § 1915(e), the court has a mandatory duty to screen initial filings. *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006). A pro se

complaint must be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But, even under this less stringent standard, pro se claims are subject to sua sponte dismissal "at any time" if the court determines that the complaint "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim includes factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth sufficient factual allegations against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013).

In Claim 5, DeFour, in part, alleges that defendant Smith threatened him by stating that he "will have it very hard [at Pocahontas], and [Smith] will have [his] ass beat and send [him] packing back to Maximum Security ASAP." Compl. 7, Dkt. No. 1. However, "mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983." *Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005) (unpublished). To this extent, Claim 5 will be partially dismissed at this time.

In Claim 7, DeFour alleges that his due process rights were violated when the defendants transferred him to Wallens Ridge. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV § 1. To establish a due process violation, a prisoner must demonstrate that (1) he had a protected liberty interest, and (2) the defendant failed to afford minimally adequate process to protect that liberty interest. *Thorpe v. Clarke*, 37 F.4th 926, 941 (4th Cir. 2022). Without a federally protected interest at stake, the inmate has no federal claim to particular procedural protections. *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015).

DeFour does not have a protected liberty interest in remaining free from transfers to less agreeable prisons or being housed in a particular institution. S*ee Montanye v. Haymes*, 427 U.S. 236, 242 (1976) (disagreeing with the lower court's proposition that the due process clause requires hearings when prison authorities transfer a prisoner to another institution because of his breach of prison rules); *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) (determining that an inmate's place of confinement is necessarily subject to the broad discretion of those managing the prison). Therefore, Claim 7 must be dismissed for failure to state a claim on which relief may be granted.

Finally, in Claim 10, DeFour contends that Parks, Dotson, and Anderson authorized the defendants' actions. It is well-settled that "vicarious liability is inapplicable to . . . § 1983 suits," therefore, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.*

To hold a supervisory official liable for misconduct by a subordinate employee, the plaintiff must state facts showing that: (1) the defendant had actual or constructive knowledge that subordinate[s]' misconduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff," (2) the defendant's "response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) an affirmative causal link" existed between the defendant's inaction and the plaintiff's constitutional injury. *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014). Moreover, a court cannot hold a supervisory official liable for failing to prevent constitutional violations by others if that official had no notice of a risk that such types of violations would occur. *Cadmus v. Williamson*, No. 5:15-CV-00045, 2016 WL 929279, at *26 (W.D. Va. Feb. 1, 2016), *R. & R. adopted*, No. 5:15-CV-045, 2016 WL 1047087 (W.D. Va. Mar. 10, 2016).

Here, Parks, Dotson, and Anderson cannot be held vicariously liable for the alleged actions of subordinate officials without an allegation of their personal

involvement, which DeFour has not pled. DeFour has not set forth any facts that these officials had knowledge of any alleged misconduct. In fact, the only mention of Parks, Dotson, and Anderson in the Complaint is that the purported "campaign of harassment" was "authorized by James Parks and Chadwick Dotson and David Anderson." Compl. 16, Dkt. No. 1. Such a speculative claim simply cannot survive. *See Twombly*, 550 U.S. at 555 (explaining that to be "plausible," a plaintiff's claim must be supported by factual allegations sufficient to "raise a right to relief above the speculative level"). Therefore, DeFour's Claim 10 against Parks, Dotson, and Anderson will be dismissed, and they will be terminated as parties to this proceeding.

The remaining defendants will be notified of this action and directed to respond to the surviving claims as outlined herein.

## III. CONCLUSION.

Accordingly, it is **ORDERED** as follows:

1. DeFour's Motion, Dkt. No. 17, is GRANTED in part and DENIEDin part;
2. The following claims are DISMISSED without prejudice for failure to state a claim: Claim 5 in part, Claim 7, and Claim 10;
3. Defendants Parks, Dotson, and Anderson shall be TERMINATED as parties to this case;

4. The Clerk shall cause the remaining defendants to be notified of this action under Rule 4 of the Federal Rules of Civil Procedure and the Agreement on Acceptance of Service;
5. The defendants shall thereafter respond to the remaining claims outlined as outlined above;
6. The court having previously assessed a filing fee in this case, and DeFour having returned an executed Inmate Consent to Withholding form, DeFour is granted leave to proceed in forma pauperis to the extent DeFour will not pay for service of process and may pay the filing fee via installments;
7. The Clerk is directed to forward a copy of DeFour's signed consent to withholding form to the Trust Accounts Officer at his current place of confinement;
8. The collection of the filing fee shall commence. The Trust Accounts Officer at DeFour's current place of confinement, and at all subsequent places of confinement, is hereby authorized to collect the fees as agreed to by DeFour on the signed consent form, and to remit such fees in accordance with 28 U.S.C. § 1915(b). The Trust Accounts Officer at DeFour's present institution is requested to place the signed consent to withholding form in DeFour's file so that it might accompany the inmate in the event of his transfer. Should DeFour be transferred to another

institution, the balance due for the civil action will be inserted in DeFour's file so that the appropriate officer at the next institution will remit the debt owed to the Clerk, U.S. District Court, 210 Franklin Road SW, Suite 540, Roanoke, Virginia 24011-2208. The Trust Accounts Officer is requested to reference the case number of this action on payments sent to the court;

9. The parties are advised that briefs, motions, and responses thereto shall be filed in compliance with the Federal Rules of Civil Procedure and the court's Local Rules;
10. DeFour shall notify the court immediately upon his release or transfer and shall provide his new address. Failure to notify the court of such a change of address in writing will result in the dismissal of this case; and
11. The parties are advised that pursuant to a Standing Order of Court, all non-dispositive matters in this case will be referred to a United States Magistrate Judge.

ENTER: October 5, 2026

/s/ JAMES P. JONES
Senior United States District Judge